Brian WALSH, D.O., (c/o East Coast TMR), Petitioner

v.

**BUREAU OF WORKERS' COMPENSATION FEE REVIEW HEARING OFFICE (Traveler's Insurance Co.), Respondent**

Brent Nickischer, D.O., Petitioner

v.

Bureau of Workers' Compensation Fee Review Hearing Office (Traveler's Insurance Co.), Respondent

John Pickard, D.O., (c/o WJO Inc.), Petitioner

v.

Bureau of Workers' Compensation Fee Review Hearing Office (Traveler's Insurance Co.), Respondent

David Yorio, D.O., (c/o East Coast TMR), Petitioner

v.

Bureau of Workers' Compensation Fee Review Hearing Office (Traveler's Insurance Co.), Respondent

Richard Mandel, M.D., (c/o East Coast TMR), Petitioner

v.

Bureau of Workers' Compensation Fee
Review Hearing Office (Traveler's
Insurance Co.), Respondent

William O'Brien, D.O., Petitioner

v.

Bureau of Workers' Compensation Fee
Review Hearing Office (Traveler's
Insurance Co.), Respondent

Michael Fischer, D.O., Petitioner

v.

Bureau of Workers' Compensation Fee
Review Hearing Office (Traveler's
Insurance Co.), Respondent

Stephen Ficchi, D.O., Petitioner

v.

Bureau of Workers' Compensation Fee
Review Hearing Office (Traveler's
Insurance Co.), Respondent

John Petolillo, Jr., D.O., Petitioner

v.

Bureau of Workers' Compensation Fee
Review Hearing Office (Traveler's
Insurance Co.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 2013.

Decided April 22, 2013.

James J. Hollawell, Newtown, for peti-
tioners.

Joseph J. Weimer, Pittsburgh, for re-
spondent Travelers Insurance Company.

BEFORE: PELLEGRINI, President Judge, BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Before the Court are eleven (11) consolidated petitions for review, filed by Petitioners [1]—nine physicians, represented in this matter by their billing and collection companies, East Coast TMR and WJO Inc., (hereafter collectively referred to as Providers or East Coast TMR). Providers, who provided medical treatment to eleven workers' compensation claimants, petition for review of orders of a Fee Review Hearing Officer (hearing officer) of the Bureau of Workers' Compensation (Bureau). The eleven petitions for review address a total of sixty-one fee review applications filed by Providers with the Bureau's Fee Review Hearing Office. Providers filed the review applications after the insurance company for the claimants' employers, Traveler's Insurance Company (Insurer), "downcoded" [2] claims that Providers submitted to Insurer for therapeutic magnetic resonance (TMR) treatment for the claimants. [3]

After the downcoding, Providers filed fee review applications with the Fee Review Hearing Office, which apparently resolved the applications in favor of Insurer. [4] Providers requested a hearing on the fee review applications. Thereafter, Insurer filed a motion to dismiss the applications, arguing that hearing officers had resolved the same coding issue in previous fee review applications involving the same parties—East Coast TMR and Insurer. The hearing officer consolidated the fee review applications and considered oral argument on the matter.

The hearing officer issued separate, but identical, decisions pertaining to all eleven fee review applications, granting Insurer's motions to dismiss and dismissing Providers' fee review applications. The hearing officer noted that under 34 Pa.Code § 127.207 (the Regulation) an insurer generally bears the burden in fee review pro-

---

1. Petitioners are Brian Walsh, D.O. (c/o East Coast TMR); Brent Nickischer, D.O.; John Pickard, D.O. (c/o WJO Inc.); David Yorio, D.O. (c/o East Coast TMR); Richard Mandel, M.D. (c/o East Coast TMR); William O'Brien, D.O.; Michael Fischer, D.O.; Stephen Ficchi, D.O.; and John Petolillo, Jr., D.O.

2. The American Medical Association has developed a system of coding called "Current Procedural Terminology" or CPT, the purpose of which is "to help ensure uniformity among medical professionals and the health insurance industry. CPT codes consist of a group of numbers assigned to every task and service a medical practitioner may provide to a patient, including medical, surgical and diagnostic services." *Liberty Mutual Ins. Co. v. Bureau of Workers' Comp., Fee Review Hearing Office (Kepko, D.O.)*, 37 A.3d 1264, 1267 (Pa. Cmwlth.) (*Kepko*), *appeal denied*, —— Pa. ——, 53 A.3d 51 (2012). The term "downcoding" applies to situations in which an insurer changes the code that a provider has used for the billing of a procedure or treat-

ment. In such cases, including this one, the code the insurer applies usually has a lower reimbursement rate than the billed code.

3. The hearing officer did not render a specific factual finding regarding the nature of TMR treatment, but in *Kepko* we referred to the record and described TMR treatment as involving "the application of electromagnetic waves or impulses to injured tissue." *Kepko*, 37 A.3d at 1267 n. 2 (citation omitted). TMR treatment, as suggested by its title, does not involve diagnostic evaluations, imaging, or the storage of information for diagnostic purposes. (Hearing Officer's Decision, Finding of Fact (F.F.) no. 8(b), 8(c).)

4. In its submission of the record to this Court, the Bureau, citing Pa. R.A.P. 1925(b), apparently submitted only a list of items in the original record (which does not appear to include the original fee review applications and administrative determinations). Thus, we are unable to determine the basis for the Bureau's initial determinations.

ceedings to demonstrate that it properly downcoded a treatment or procedure. The hearing officer, however, considered two decisions of another hearing officer, Richard Lengler, to have collateral estoppel effect with regard to Providers' fee review applications. Mr. Lengler's decisions upheld the identical downcoding by Insurer in previous challenges by East Coast TMR. The hearing officer essentially concluded that because the ultimate downcoding issue had been decided by Mr. Lengler in Insurer's favor through earlier decisions, Providers were collaterally estopped from challenging future downcoding by Insurer for TMR services.

■ Providers petitioned for review of the hearing officer's orders,[5] raising the following issues: (1) whether fee review applications are fact-specific, such that the requirement of strict compliance with downcoding procedures precludes application of the collateral estoppel doctrine; and (2) whether the determination of the proper code for TMR treatment was not essential to the judgment of the earlier decisions upon which the hearing officer relied, and, thus, the hearing officer erred in concluding that collateral estoppel applied.

■ Providers first argue that the Regulation is applicable to an insurer's downcoding practices in all situations where an insurer downcodes a treatment, and that an insurer must comply strictly with the procedural requirements for downcoding. The Regulation provides:

(a) Changes to a provider's codes by an insurer may be made if the following conditions are met:

(1) The provider has been notified in writing of the proposed changes and the reasons in support of the changes.

(2) The provider has been given an opportunity to discuss the proposed changes and support the original coding decisions.

(3) The insurer has sufficient information to make the changes.

(4) The changes are consistent with Medicare guidelines, the act and this subchapter.

(b) For purposes of subsection (a)(1), the provider shall be given 10 days to respond to the notice of the proposed changes, and the insurer must have written evidence of the date the notice was sent to the provider.

(c) Whenever changes to a provider's billing codes are made, the insurer shall state the reasons why the provider's original codes were changed in the explanation of benefits required by § 127.209 (relating to explanation of benefits paid).

(d) *If an insurer changes a provider's codes without strict compliance with subsections (a)-(c), the Bureau will resolve an application for fee review filed under § 127.252 (relating to application for fee review—filing and service) in favor of the provider under § 127.254 (relating to downcoding disputes).*

34 Pa.Code § 127.207 (emphasis added). Relying on the Regulation, Providers argue that a non-waivable prerequisite to downcoding is that an insurer must comply strictly with the procedural requirements. Providers argue that the hearing officer erred because he did not conduct a hearing on the question of whether Insurer complied with the regulatory pre-requi-

---

**5.** This Court's standard of review of a fee review decision of a Bureau hearing officer is limited to considering whether necessary factual findings are supported by substantial evidence, whether any constitutional rights were violated, and whether the hearing officer erred as a matter of law. 2 Pa.C.S. § 704.

sites for downcoding. Providers argue that, contrary to the hearing officer's view, an essential issue in this case is whether Insurer complied and that the issue of compliance is one that will vary factually in every case. Providers argue, therefore, that the hearing officer erred in applying the doctrine of collateral estoppel before considering the preliminary procedural issue.

Providers rely upon our decision in *Liberty Mutual Ins. Co. v. Bureau of Workers' Compensation, Fee Review Hearing Office (Kepko, D.O.)*, 37 A.3d 1264, 1267 (Pa.Cmwlth.) ( *Kepko* ), *appeal denied*, — Pa. —, 53 A.3d 51 (2012), which, like this case, involved a dispute regarding the CPT code for TMR treatment. In that case, the provider identified the six treatments by reference to the CPT for magnetic resonance diagnostic procedures, which provided for a reimbursement of $2,898.00 per procedure. The insurer denied the payment and downcoded to a different CPT code. A hearing officer ultimately concluded that the provider in that case was entitled to a payment of $16,143.77 plus interest with regard to four of the fee review applications, based upon the insurer's failure to follow the procedures for downcoding the bills. The insurer petitioned for review of that decision. This Court rejected the insurer's claim that, because of previous decisions in TMR fee review cases, the provider was collaterally estopped from challenging the issue of the appropriateness of the code that the insurer assigned for the TMR treatments. We held as follows: "[A] determination of the appropriate code for TMR treatments was neither necessary nor relevant to the outcome of this case.... Further, these decisions are not binding on this Court. Moreover, the issue of whether [the insurer] properly downcoded [the provider]'s bills is unique to this case and is not precluded by these previous decisions." *Kepko*, 37 A.3d at 1269–70.

Providers here similarly argue that the issue of the appropriateness of a billing code is not subject to review until an insurer has demonstrated that it has strictly complied with the procedural requirements for downcoding. Indeed, as indicated above, the Regulation affirmatively provides that in such situations where an insurer does not demonstrate compliance, the Bureau must resolve the dispute in favor of the provider. 34 Pa.Code § 127.207(d). Providers argue that the factual matrix for demonstrating compliance with the procedural requirements of the Regulation is always unique. For example, an insurer may have complied with the requirement to give notice in writing regarding a downcoded bill (34 Pa.Code § 127.207(a)(1)), but may have failed to give the provider an opportunity to discuss the downcoding decision of the insurer (34 Pa.Code § 127.207(a)(2)). Providers contend that if an insurer fails to demonstrate that it complied with the procedural requirements then the insurer has failed to strictly comply. Thus, Providers argue that the regulations mandate in the first instance that the Bureau (in its initial administrative determination) decide whether compliance occurred.

Providers contend that when a provider seeks review of an administrative determination, as in the matter now before the Court, the hearing officer must resolve the matter in favor of the provider, if he concludes that an insurer failed to comply. Providers argue that, in those circumstances, the hearing officer would never get to the question of which CPT code is appropriate for the billed procedure. As a consequence, the hearing officer would never address the question of whether collateral estoppel bars relitigation of the ap-

propriateness of the CPT code assigned by the insurer.

As we stated in *Kepko*, the collateral estoppel doctrine will preclude litigation of an issue of fact or law that has been litigated in a previous proceeding when an identity of following five factors exists between the two proceedings:

(1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Kepko*, 37 A.3d at 1269. Insurer's argument essentially is that because the hearing officer in the earlier decisions concluded that the downcoding of Providers' bills for TMR treatment was appropriate, Insurer does not need in this case to demonstrate compliance with the procedural requirements set forth in the Regulation. The thrust of Insurer's argument is that the ultimate outcome in the case would be the same regardless of whether Insurer complied with the procedural "strict compliance" requirements.

Insurer also argues that compliance is not necessary because, unlike other cases involving downcoding of treatments that present unique billing and coding issues such as Vax D[6] and H Wave[7] therapy, there is nothing unique about TMR treatment. Insurer suggests that this Court should reject Providers' reliance on the "strict compliance" language of the Regulation, contending that the downcoding Regulation is applicable to providers only, rather than to individual patients. Thus, Insurer argues that because the issue of proper coding has been decided in a previous proceeding between East Coast TMR and Insurer, the Bureau (or a hearing officer, as in this case) need not make an evaluation regarding compliance with the procedural requirements, because the ultimate outcome is the same once collateral estoppel applies to the merits of the downcoding.

In our view, however, none of the cases to which Insurer cites involved instances where an insurer sought to avoid compliance with the Regulation. Thus, we do not find that those decisions provide guidance or contain holdings that support Insurer's collateral estoppel argument. Those cases also do not support a basis upon which to distinguish *Kepko*.

Rather, the language of the Regulation is clear; before downcoding, an Insurer *must* comply with the requirements of 34 Pa.Code § 127.207. Otherwise, subsection (d) of the Regulation directs that "the Bureau [upon initial review of a fee review application] will resolve an application for fee review filed under § 27.252 ... *in favor of the provider under § 127.254.*" 34 Pa.Code § 127.207 (emphasis added). Moreover, while Insurer may be correct in arguing that the nature of the billing and coding of TMR treatment is never unique, we are bound by the clear regulatory language. The degree of an insurer's compliance is a matter that may vary from case to case, and the regulations require a demonstration of compliance *before* an adjudicator may address the merits of the downcoding. We note also that the Regulation

**6.** *Legion Ins. Co. v. Bureau of Workers' Comp., Fee Review Hearing Office,* 42 A.3d 1151 (Pa. Cmwlth.2011).

**7.** *City of Philadelphia v. Medical Fee Review Hearing Office (RJS Indus.),* 737 A.2d 356 (Pa.Cmwlth.1999).

specifically calls for a distinct outcome when an insurer fails to comply—*i.e.,* a decision in favor of the provider. If we were to agree with Insurer, we could do so only by ignoring the plain language of the Regulation. Therefore, we agree with Providers that it was improper for the hearing officer to consider the application of the doctrine of collateral estoppel before considering first whether Insurer complied with the requirements of Section 127.207.

We acknowledge the conundrum an insurer faces in circumstances such as these. We do not believe that the drafters of the Regulation intended to encourage repetitious challenges that waste the resources of an agency and this Court, but we perceive no alternative resolution under the terms of the Regulation. The Regulation appears to have been promulgated as a shield to protect providers against arbitrary action on the part of an insurer. There is at least a suggestion here, however, that Providers may be employing the Regulation as a sword to unjustifiably "upcode" TMR treatment. This Court looks with disapproval on actions a party takes based upon purely specious reasoning, because the result is the useless diversion of adjudicators' and reviewing courts' time and energy, as well as the financial resources an insurer must expend to defend repeatedly its downcoding. Nevertheless, we are hamstrung in this instance.

Accordingly, because we conclude that the hearing officer erred in granting Insurer's motion to dismiss, we will reverse the order and remand the matter to the Fee Review Hearing Office for a hearing. We observe that the hearing officer may consider not only the question of Insurer's compliance, but also, if the hearing officer concludes that Insurer did comply with 34 Pa.Code § 127.207, the hearing officer then may consider whether collateral estoppel precludes consideration of the merits of Providers' challenge to the downcoding at issue in this matter.

Judge McCULLOUGH concurs in result only.

### ORDER

AND NOW, this 22nd day of April, 2013, the orders of the Bureau of Workers' Compensation, Fee Review Hearing Office, are REVERSED. The matters are REMANDED to the Fee Review Hearing Office for a full de novo hearing.

Jurisdiction relinquished.