IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Armour Pharmacy,             :
           Petitioner       :
                                 :
           v.               :    No. 1725 C.D. 2017
                                 :    Argued: December 12, 2018
Bureau of Workers' Compensation   :
Fee Review Hearing Office         :
(Wegman's Food Markets, Inc.),     :
           Respondent    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                       FILED: March 29, 2019

         Armour Pharmacy (Pharmacy) petitions for review of an adjudication of the Bureau of Workers' Compensation, Fee Review Hearing Office (Hearing Office) that vacated three determinations of the Bureau's Medical Fee Review Section that directed Wegman's Food Markets, Inc. (Employer) to reimburse Pharmacy for medications it had dispensed to Ryan Allem (Claimant). Employer challenged these fee determinations for the stated reason that Pharmacy was not a "provider" under the Pennsylvania Workers' Compensation Act (Act)[1] and, thus, not entitled to reimbursement. Concluding that the Bureau's Medical Fee Review Section lacked jurisdiction to determine whether Pharmacy was a "provider," the Hearing Office vacated the three determinations and dismissed Employer's appeal

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

thereof. Pharmacy argues that the Hearing Office's adjudication has left it without a forum to challenge Employer's refusal to reimburse it for medications it dispensed to treat Claimant for his work injury, and this violates due process. We reverse and remand.

## Background

On November 2, 2016, Bucks County Orthopedic Specialists prescribed Claimant a medical cream compound consisting of "Ketamine 10%, Flurbiprofen 10%, Gabapentin 10%, Cyclobenzaprine 3%, Bupivacaine 2%, [and] Transdermal Base (qs)" to treat his pain. Reproduced Record at 98a (R.R. __). Pharmacy dispensed the medication to Claimant on three occasions and thereafter invoiced Employer $3,634.17 for each prescription. Employer denied payment on the first invoice of November 30, 2016, for the following reasons:

> Charge for pharmaceuticals exceed the fees established by the fee schedule rates [and the usual customary and reasonable] rates. [Employer] does not cover pain cream compounds. A letter of medical necessity from your doctor is required if no alternatives are available.

R.R. 4a. Employer denied payment on the second invoice of December 29, 2016, stating as follows: "Request for treatment has been denied, withdrawn or refused" and "Denied: Utilization review filed." R.R. 16a. Likewise, Employer denied payment on the third invoice of March 1, 2017, stating as follows: "Denied: Medical records. Please resubmit with related medical records to: [Employer's address]." R.R. 40a.

Pharmacy filed three applications with the Bureau's Medical Fee Review Section, requesting a review of Employer's refusal to pay the three invoices for the compound cream. The Medical Fee Review Section found, first, that

2

Employer had timely refused payment on each of the three invoices. Next, the Medical Fee Review Section found that the amount of payment owed under the required "Workers' Compensation fee calculations" was $3,322.16. R.R. 29a. The Medical Fee Review Section directed Employer to pay Pharmacy $3,322.16, plus ten percent interest on each invoice.

While the Medical Fee Review Section's review of the third application was pending, Employer filed a request for a *de novo* hearing on the first two administrative decisions. Employer identified the legal issue as follows:

> Lack of jurisdiction in the fee reviewers and lack of proper "provider" status on the part of the billing entity. Failure to bill at the proper statutory rates; and award in excess of statutory rates. Employer reserves right to amend to include additional grounds.

R.R. 44a. The Hearing Office assigned Employer's appeal to a hearing officer, and Employer's application was amended to include the Medical Fee Review Section's decision on Pharmacy's third application.

On July 24, 2017, Employer filed a motion to dismiss its own appeal. In support, Employer argued that because Pharmacy was not a "provider" within the meaning of the Workers' Compensation Act, the Hearing Office lacked jurisdiction. Pharmacy opposed the motion to dismiss, arguing that Employer had waived its "provider" argument by not raising the issue in its denial of Pharmacy's invoices or with the Medical Fee Review Section. By decision and order of October 30, 2017, the Hearing Office granted Employer's motion to dismiss. Relying on this Court's holding in *Selective Insurance Company of America v. Bureau of Workers' Compensation Fee Review Hearing Office (The Physical Therapy Institute)*, 86 A.3d 300 (Pa. Cmwlth. 2014), the Hearing Office held that it could not proceed on

3

Employer's appeal because it challenged Pharmacy's status as a "provider," an issue beyond its jurisdiction. Likewise, the Medical Fee Review Section lacked jurisdiction to act upon Pharmacy's fee review applications and, thus, the Hearing Office vacated those determinations. Finally, the Hearing Office rejected Pharmacy's waiver argument, citing this Court's holding in *Pittsburgh Moose Lodge #46 v. Workmen's Compensation Appeal Board (Greico)*, 530 A.2d 982 (Pa. Cmwlth. 1987), that subject matter jurisdiction is an issue that can be raised at any point in litigation.

On appeal,[2] Pharmacy argues that the Court should reconsider its ruling in *Selective Insurance* because it leaves a provider that renders medical treatment to a workers' compensation claimant without recourse whenever an employer refuses payment for the stated reason that the provider is not a "provider" within the meaning of the Act. Pharmacy suggests that this Court direct the Bureau of Workers' Compensation to promulgate a regulation to create a remedy by which a putative provider may obtain a determination of its status. A remedy is necessary because otherwise Pharmacy will be deprived of property without due process of law.[3]

---

[2] This Court's scope of review of a decision by the Bureau's Hearing Office determines whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, and whether the hearing officer committed an error of law. 2 Pa. C.S. §704; *Walsh v. Bureau of Workers' Compensation Fee Review Hearing Office (Traveler's Insurance Co.)*, 67 A.3d 117, 120 n.5 (Pa. Cmwlth. 2013). Regarding questions of law, our scope of review is plenary and our standard of review is *de novo*. *Sedgwick Claims Management Services, Inc. v. Bureau of Workers' Compensation, Fee Review Hearing Office (Piszel and Bucks County Pain Center)*, 185 A.3d 429, 433 n.2 (Pa. Cmwlth. 2018).

[3] The cost containment regulations forbid a provider from holding "an employe liable for costs related to care or services rendered in connection with a compensable injury under the act." 34 Pa. Code §127.211(a).

4

**Applicable Law**

We begin with a review of the applicable provisions of the Act, which, *inter alia*, require employers to provide the medical care needed to treat an employee's work injury. Section 306(f.1) of the Act, 77 P.S. §531. To that end, employers must pay "reasonable surgical and medical services, services rendered by physicians or other health care *providers* . . . medicines and supplies, as and when needed." 77 P.S. §531(1)(i) (emphasis added). Section 109 of the Act defines a "health care provider" as follows:

> *[A]ny person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services*, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor *or pharmacist* and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

77 P.S. §29 (emphasis added).

The Act requires employers to make prompt payment on provider invoices for reasonable and necessary medical treatment of a claimant's work injury, and it establishes specific procedures for resolving disputes about a particular invoice. Section 306(f.1)(5) states:

> The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. *All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6).* The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in

5

dispute. *A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review* with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.

77 P.S. §531(5) (emphasis added). Subsection 6 states, in relevant part, as follows:

*[D]isputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions*:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review.

77 P.S. §531(6) (emphasis added).

In sum, where an employer challenges a provider's treatment as neither reasonable nor necessary, it must seek utilization review pursuant to Section 306(f.1)(6) of the Act. Where a provider does not receive payment within 30 days (and payment has not been stayed by an employer's utilization review request), it

6

has recourse. The provider may file a fee review petition under Section 306(f.1)(5) of the Act.

> [T]he fee review process *presupposes* that liability has been established, either by voluntary acceptance by the employer or a determination by a WCJ [workers' compensation judge]. Neither the Act nor the medical cost containment regulations provide any authority for a fee review officer to decide the issue of liability in a fee review proceeding. The Department's regulations, at 34 Pa. Code §127.255(1), state that an application for fee review filed by a provider is premature and will be returned if "[t]he insurer denies liability for the alleged work injury." The issue for the fee review officer is the "amount and timeliness of the payment made by an insurer." 34 Pa. Code §127.251.

*Nickel v. Workers' Compensation Appeal Board (Agway Agronomy)*, 959 A.2d 498, 503 (Pa. Cmwlth. 2008) (emphasis added). In short, an employer's liability for a claimant's work injury must be established before the fee review provisions can come into play. Our Supreme Court has underscored this point, stating that a fee review is designed to be a simple process with a "very narrow scope" limited to determining the "relatively simple matters" of "amount or timeliness" of payment for medical treatment. *Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division*, 22 A.3d 189, 196-97 (Pa. 2011).

Whether an entity is a "provider" has been considered a question of employer liability and, thus, beyond the scope of a fee review proceeding. In *Selective Insurance*, 86 A.3d 300, the employer sought review of two fee determinations of the Bureau's Medical Fee Review Section, which had awarded

7

payment to the so-called "billing agency," *i.e.*, The Physical Therapy Institute.  In its request for a hearing on these determinations, the employer asserted that The Physical Therapy Institute was not a provider but a billing entity.  The Hearing Office dismissed the employer's petition, stating that it lacked jurisdiction to determine whether The Physical Therapy Institute was a provider, and this Court affirmed.

In so holding, we noted that the employer did not question the amount of the invoice but, instead, its liability to The Physical Therapy Institute.  Since liability "must be established before a fee review proceeding can take place," we concluded that the issue was beyond the scope of a fee review proceeding and, thus, the Hearing Office "lacked jurisdiction to determine whether The Physical Therapy Institute [was] a medical provider."  *Id.* at 304-05.  Notably, the record in *Selective Insurance* showed that at least two claimants treating with The Physical Therapy Institute had filed penalty petitions to litigate the issue of whether The Physical Therapy Institute was a provider within the meaning of the Act.  Given this record, this Court observed:

> Claimants have an incentive to file a petition on behalf of a provider because when an insurer violates the Act by failing to make proper payment to a medical provider, the penalty is payable to the claimant. *Westinghouse Electric Corporation v. Workers' Compensation Appeal Board (Weaver)*, 823 A.2d 209, 218 (Pa. Cmwlth. 2003).  The absence of a direct statutory remedy for providers does not mean that the Court may expand the scope of a fee review to create a remedy.  The matter is one for the legislature, assuming there is a need for a provider to have another remedy.

*Id*. at 305 n.9. With regard to The Physical Therapy Institute's recourse, the Court noted that the claimant "can file a petition to establish [an] [i]nsurer's liability to The Physical Therapy Institute, such as a review petition or a penalty petition." *Id.*

Thereafter, in *Physical Therapy Institute, Inc. v. Bureau of Workers' Compensation Fee Review Hearing Office*, 108 A.3d 957, 960 (Pa. Cmwlth. 2015), The Physical Therapy Institute argued that it was unfair for an employer to set aside a fee review determination by fabricating "an unfounded factual or legal issue, leaving providers with no recourse or remedy." (internal footnote omitted). However, we observed that

> the issue of whether [The] Physical Therapy Institute can establish itself as the provider entitled to payment, by contract with another provider, will be decided. Should [The] Physical Therapy Institute be adjudicated the provider, it can re-bill Insurer and proceed to fee review if an issue arises involving amount or timeliness of payment. Should either party believe that the other is effecting a fraud, it can pursue that claim in a legal action, such as a declaratory judgment action.

*Id*.

Recently, in *Armour Pharmacy v. Bureau of Workers' Compensation Fee Review Hearing Office (National Fire Insurance Company of Hartford)*, 192 A.3d 304 (Pa. Cmwlth. 2018) (*Armour I*), Pharmacy appealed a Hearing Office determination that it lacked jurisdiction over a fee review determination that, as here, involved the dispensing of a compound cream. Prior to the hearing on the employer's appeal of the fee determination, the employer and the claimant entered into a Compromise and Release (C&R) Agreement that obligated the employer to pay for previously incurred medical expenses that were determined to be reasonable and necessary for treatment of the claimant's injury. Notably, the C&R Agreement explicitly relieved the employer of liability for past, present or future prescriptions

for compound creams. Before the Hearing Office, the employer argued that under the C&R Agreement, it had no liability to Pharmacy and, in any case, the Hearing Office lacked jurisdiction. Pharmacy petitioned for this Court's review, and we held in favor of Pharmacy.

We concluded that the employer could not use a C&R Agreement, to which Pharmacy was not a party, to deprive Pharmacy of its right to payment under the Act. Further, the employer had previously sought utilization review of the compound cream, and it was determined to be a reasonable and necessary treatment of the claimant's work injury. However, the employer did not appeal that determination. We construed the C&R Agreement, which established the employer's liability for past medical expenses, to require reimbursement for the compound cream.

The polestar in *Armour I* was that the Act must be construed in accordance with due process of law. An employer may challenge a claimant's medical treatment as not medically necessary. Once it loses that challenge, however, it cannot use a C&R Agreement to deprive the provider of its right under the Act to prompt payment for services rendered to treat a claimant's work injury.

**Pharmacy Issues on Appeal**

In its first issue, Pharmacy requests this Court to revisit or limit its holding in *Selective Insurance* and offers several reasons in support thereof. First, because the Bureau has not promulgated an appropriate regulation, a provider does not have a remedy where the employer questions its status as a "provider" under the Act. Second, the Court's observation in *Selective Insurance* that it is for the claimant to establish the employer's liability to a "provider" did not protect providers because they cannot compel claimants to file a petition. Indeed, a claimant may fear

10

retaliation by the employer in the form of a termination, suspension or modification petition, and a claimant may not be able to afford counsel. Third, a claimant's interest does not necessarily coincide with a provider's interest, as was shown in *Armour I*.

Pharmacy argues that *Selective Insurance* should be limited to its facts, where the employer made a *prima facie* showing that the billing agency was not a provider. In *Selective Insurance*, the billing entity's status was a valid question because the invoices named two different physical therapists, one of whom had a business address different from that of The Physical Therapy Institute. By contrast, here, Pharmacy is both the provider *and* the billing entity, and Employer presented no evidence to support its averment to the contrary.

Pharmacy argues that *Physical Therapy Institute* is likewise factually distinguishable because in that case, the employer had consistently maintained that the "provider" seeking payment did not render the physical therapy services recited in the invoice. By contrast, here, Employer has denied payment for several reasons, stating that the amounts exceeded the fee schedule and that compound creams are not medically necessary. At no point did Employer present any evidence that Pharmacy was not a provider.

Employer does not respond to these arguments, stating that it "has little to argue with [Pharmacy] in terms of what the statute says, what the regulations provide, and what prior case law emanating from this [C]ourt has held with respect to the fee review process." Employer Brief at 7.

In its second issue, Pharmacy contends that it is being denied its due process of law.[4] Specifically, the Act and implementing regulations, as presently

---

[4] The Due Process Clause of the Fourteenth Amendment states as follows:

11

construed, empower an employer (or its insurer) to refuse payment for medical treatment of a claimant without having to make its case in an evidentiary hearing. In support of its due process claim, Pharmacy cites *Cruz v. Workers' Compensation Appeal Board (Philadelphia Club)*, 728 A.2d 413 (Pa. Cmwlth. 1999). There, we reversed a decision of a workers' compensation judge (WCJ) that a provider's treatment was unreasonable where the provider had not been given notice or an opportunity to participate in the deposition of an expert who opined that the treatment was unreasonable. We held that this was "fundamentally unfair" to the provider. *Id.* at 417. Likewise, here, Pharmacy contends that it is unfair to extinguish its statutory right to payment without an evidentiary hearing.

Pharmacy also directs our attention to *Caso v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 790 A.2d 1078 (Pa. Cmwlth. 2002), *rev'd*, 839 A.2d 219 (Pa. 2003), which considered the certification of vocational experts. The Workers' Compensation Appeal Board (Board) held that the Act permitted WCJs to certify consultants as expert witnesses after the vocational interview has taken place. We disagreed and reasoned, *inter alia*, that the Bureau had to promulgate a regulation before WCJs could qualify vocational experts. Our

---

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States … nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, §1. The Pennsylvania Constitution also provides this protection. PA. CONST. art. I, §9.

One asserting a due process violation must show "an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotation marks omitted).

Supreme Court reversed, holding that WCJs routinely make competency determinations about experts and were fully able to do so in this context. Pharmacy argues that our reasoning in *Caso* has continued viability to the extent it stands for the principle that this Court can direct the promulgation of a regulation. Pharmacy urges this Court to direct the Bureau to do so here so that providers can have a way to determine their status under the Act.

Employer argues, in response, that Pharmacy waived its due process claim. Employer observes that it was the only party that attempted to submit evidence, pointing to its May 25, 2017, subpoena request.[5] However, even if this Court accepted Pharmacy's constitutional challenge to the Act, that ruling will still leave Pharmacy without a remedy under the Act. Employer argues that the Court can avoid this dilemma with a construction of the Act that allows the Hearing Office "to entertain evidence on the issue of whether a purported 'provider' is, in fact, a 'provider' or 'the' provider in the first instance." Employer Brief at 11. Allowing the Hearing Office to make the threshold determination of "provider status" and its own subject matter jurisdiction saves the fee review provisions in the Act. However, this will not entitle Pharmacy to a hearing in this case because Pharmacy did not make a proffer of evidence relevant to its provider status before the Hearing Office.[6]

**Analysis**

The principles governing administrative practice and procedure in Pennsylvania are founded in our Constitution. Article V states as follows:

---

[5] The subpoena request was denied because the Hearing Office concluded it lacked jurisdiction over the matter.

[6] Employer argues that it acted properly by requesting the subpoena instead of summarily requesting dismissal. Employer acknowledges that it also did not present evidence at the hearing, but it attempted to do so by requesting the subpoena. It contends that Pharmacy has no excuse for not putting forth a case on its provider status.

13

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

PA. CONST. art. V, §9. As our Supreme Court has recently explained, Article V, Section 9 "is consistent with inherent notions of due process." *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 474 (Pa. 2017).

The legislature has provided specificity to the administrative agency appeal process in the Administrative Agency Law, 2 Pa. C.S. §§501-508; 701-704. It defines an "adjudication" as a "final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. §101. It further provides:

> No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

2 Pa. C.S. §504. Thus, "[u]ntil a record is made of the proceedings," the adjudication is not valid. *Turner v. Pennsylvania Public Utility Commission*, 683 A.2d 942, 946 (Pa. Cmwlth. 1996). "The reason behind this requirement is that judicial review without a proper record or a valid administrative adjudication is a premature interruption of the administrative process." *Id*. at 946. When the governing statute has "no specific provisions" by which to obtain an administrative hearing on the agency's action, it is the "the Administrative Agency Law [that] provides a default

mechanism for the provision of hearings and for appeals from administrative adjudications, which comport with due process requirements." *Id.*

With these principles in mind, we turn to the fee review requirements established in the Act. The implementing regulations guarantee prompt payment to a provider of medical treatment "to employes with work-related injuries and illnesses." 34 Pa. Code §127.1. They allow employers to challenge a course of treatment as not medically necessary. 34 Pa. Code, Chapter 127, Subchapter C (relating to medical treatment review). Employer may "downcode" provider charges in accordance with the cost containment requirements. 34 Pa. Code §127.207.

To implement this scheme, the Bureau of Workers' Compensation has created the Medical Fee Review Section to review provider complaints of untimely or inadequate payment, and it has created the Fee Review Hearing Office to conduct an evidentiary hearing on the validity of a fee review determination. 34 Pa. Code §127.257(a) ("A provider or insurer shall have the right to contest an adverse administrative decision on an application for fee review."). That hearing includes an examination of "all relevant evidence," and the testimony is "recorded and a full record kept of the proceeding." 34 Pa. Code §127.259(b), (d). The Hearing Office issues a "fee review adjudication" that "will include all relevant findings and conclusions, and state the rationale." 34 Pa. Code §127.260(a). These procedures ensure that the Bureau's adjudication comports with the requirements of the Administrative Agency Law, 2 Pa. C.S. §504, for a valid adjudication.

It offends due process, Article V, Section 9 of the Pennsylvania Constitution as well as the Act's careful scheme for resolving fee disputes to place the question of whether a putative provider is actually a "provider" beyond the reach of judicial review. We hold that where the employer challenges a fee determination

15

of the Medical Fee Review Section for the stated reason that the medical service was not rendered by a "provider" within the meaning of the Act, that threshold question must be decided by the Hearing Office. Jurisdiction, a quasi-judicial matter, is not to be decided by the Medical Fee Review Section, whose responsibility is solely administrative. Its inquiry is limited to the timeliness of the employer's payment (or denial) and the correct amount of reimbursement owed to the provider. 34 Pa. Code §127.252.

This holding is consistent with precedent in analogous situations. It has long been held, for example, that a challenge to an arbitrator's jurisdiction over a grievance brought under a collective bargaining agreement must be presented to the arbitrator in the first instance. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 451 A.2d 671 (Pa. 1982). If a party is not satisfied, the question may then be raised in judicial review. *Id.*

*J.G. v. Department of Public Welfare*, 795 A.2d 1089 (Pa. Cmwlth. 2002), is also instructive. In *J.G.*, we considered a challenge to the administrative hearing procedures under the Child Protective Services Law,[7] which established a ChildLine and Abuse Registry consisting of "indicated" and "founded" reports of child abuse. 23 Pa. C.S. §6331(2) (requiring the Department to establish "[a] Statewide central register of child abuse"). The Child Protective Services Law provided that a perpetrator of child abuse named in an indicated report could have an administrative hearing to challenge the report. However, the statute did not provide this opportunity to perpetrators named in a founded report, which is issued following a judicial adjudication of abuse in a criminal conviction or a civil dependency proceeding. In *J.G.*, a child was adjudicated a "dependent child"

---

[7] 23 Pa.C.S. §§6301-6386.

16

because of abuse suffered while in the care of both parents. The mother sought a hearing to challenge the founded report that named her as a perpetrator, but the Department dismissed her hearing request as not authorized by the Child Protective Services Law.

We reversed and remanded the matter to the Department for a hearing. We held that the omission of a hearing on a founded report in the Child Protective Services Law was not dispositive. We looked to the Administrative Agency Law, which defines an "adjudication" as a "final order, decree, decision, determination or ruling by an agency affecting personal or property rights, [or] privileges ... of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. §101.[8] Further, an "adjudication" is not valid except where the party has "reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. §504. In *J.G.*, the child dependency adjudication did not "specifically find that [the mother] was guilty of abuse." *J.G.,* 795 A.2d at 1093. A founded report naming the mother as a perpetrator of child abuse in the absence of a hearing on that disputed fact would constitute an invalid adjudication. Accordingly, this Court filled the lacuna in the Child Protective Services Law with the default hearing required by the Administrative Agency Law and directed the Department to conduct a hearing on the mother's challenge to the founded report.

Likewise, here, it is for the Hearing Office to conduct a hearing on whether a person invoking the remedy set forth in Section 306(f.1)(5) is a "provider"

---

[8] This Court held that a "final determination or order" that "brands" a named perpetrator as a child abuser in a statewide central registry affects personal rights and, as such, constitutes an adjudication. *J.G.*, 795 A.2d at 1092. The impact on personal rights was a legal determination based upon a review of the Child Protective Services Law. A hearing on the extent to which a founded report "affects" a named perpetrator's personal rights was neither appropriate nor necessary.

17

within the meaning of the Act. In no way does this holding expand the scope of the fee review proceeding beyond timeliness and amount owed to a provider that has treated a claimant for his work injury. This holding does not allow the Hearing Office to determine the reasonableness of the medical care or service; the claimant's injury as work-related; or the employer's liability for a work injury. Where utilization review is sought, a fee determination is premature.[9]

Our holding does not limit the determination of the status of a "provider" to a fee review proceeding. In appropriate cases, this question may also be determined by a workers' compensation judge in the course of a claim or penalty petition proceeding. This was the case in *Selective Insurance*. Where the employer's liability for medical treatment is established without a determination on the status of a putative provider, then this question can be addressed by the Hearing Office where raised by the employer. *Selective Insurance* is distinguishable, but to the extent *Selective Insurance* is inconsistent with our holding here, it is overruled.[10]

## Conclusion

For all of the above-stated reasons, we reverse the Hearing Office's adjudication and remand the matter for a determination of whether Pharmacy is a provider within the meaning of the Act.

_____
MARY HANNAH LEAVITT, President Judge

---

[9] Employer denied payment on Pharmacy's December 29, 2016, invoice because, *inter alia*, it sought utilization review. If that utilization review has not been completed, then the Hearing Office should hold Employer's hearing request until the utilization review is completed.

[10] We reject Employer's argument that Pharmacy waived the question of its status as a "provider" under the Act. Employer's motion to dismiss was granted without evidence from either party.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Armour Pharmacy,                                :
                    Petitioner                  :
                                                :
        v.                                      :  No. 1725 C.D. 2017
                                                :
Bureau of Workers' Compensation                 :
Fee Review Hearing Office                        :
(Wegman's Food Markets, Inc.),                  :
                    Respondent                  :

# **O R D E R**


        AND NOW, this 29th day of March, 2019, the order of the Bureau of Workers' Compensation Fee Review Hearing Office, dated October 30, 2017, is hereby REVERSED and this matter is REMANDED for further proceedings in accordance with the attached opinion.

        Jurisdiction relinquished.


        _____
        MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Armour Pharmacy,     :
           :
     Petitioner :
           :
    v.     : No. 1725 C.D. 2017
           : Argued: December 12, 2018
Bureau of Workers' Compensation :
Fee Review Hearing Office   :
(Wegman's Food Markets, Inc.),  :
           :
     Respondent :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ROBERT SIMPSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE ELLEN CEISLER, Judge


CONCURRING OPINION
BY JUDGE WOJCIK        FILED: March 29, 2019


    I join in the result reached by the Majority. By limiting the holdings in *Selective Insurance Company of America v. Bureau of Workers' Compensation Fee Hearing Office (The Physical Therapy Institute)*, 86 A.3d 300 (Pa. Cmwlth. 2014), and *Physical Therapy Institute, Inc. v. Bureau of Workers' Compensation Fee Hearing Office*, 108 A.3d 957 (Pa. Cmwlth. 2015), this decision fills a gap in the statutory and regulatory scheme.

    However, I write separately to object to the Court's reliance on *J.G. v. Department of Public Welfare*, 795 A.2d 1089 (Pa. Cmwlth. 2002), as support in this matter. I note that the two cases are inapposite, as the petitioner in the present appeal

*seeks an adjudication* of its statutory rights.  In sharp contrast, we held in *J.G.* that the petitioner was entitled to an administrative appeal *from an adjudication*.[1]

Accordingly, I concur in the result only.

_____
MICHAEL H. WOJCIK, Judge

---

[1] Additionally, I disagree with the Majority's interpretation of *J.G.*, because the issue of whether a founded report of child abuse constitutes an "adjudication" was neither litigated nor decided by the Court in *J.G.*  Majority, slip op. at 16-17 and n.7.  Rather, it was *presumed*, apparently based on the Court's misapprehension of the consequences: "A founded report of child abuse is an 'adjudication' as it is a final determination that affects a named perpetrator's personal rights by branding him or her as a child abuser in a Statewide register of child abuse."  795 A.2d at 1092.  The quoted language reflects a belief that a named perpetrator necessarily suffers great harm to his or her reputation.  However, the presumption of harm underlying the analysis in *J.G.* is inconsistent with our Supreme Court's analysis in *G.V. v. Department of Public Welfare*, 91 A.3d 667 (Pa. 2014), and *R. v. Department of Public Welfare*, 636 A.2d 412 (Pa. 1994), and it is unsupported by the Child Protective Services Law, 23 Pa. C.S. §§6301-6386.