J-E02002-22

2023 PA Super 88

| | | |
|---|---|---|
| ELITE CARE, RX, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PREMIER COMP SOLUTIONS, LLC; | : | |
| LAUNDRY OWNERS' MUTUAL | : | |
| LIABILITY INSURANCE | : | |
| ASSOCIATION; UPMC BENEFIT | : | |
| MANAGEMENT SERVICES, INC. | : | |
| D/B/A UPMC WORK PARTNERS; | : | |
| LACKAWANNA CASUALTY COMPANY; | : | |
| AND BRICK STREET MUTUAL | : | |
| INSURANCE COMPANY | : | |
| | : | |
| APPEAL OF: PREMIER COMP | : | |
| SOLUTIONS, LLC, LAUNDRY | : | |
| OWNERS' MUTUAL LIABILITY | : | |
| INSURANCE ASSOCIATION, | : | |
| LACKAWANNA CASUALTY COMPANY | : | |
| AND BRICK STREET MUTUAL | : | |
| INSURANCE COMPANY | : | No. 1144 WDA 2020 |

Appeal from the Order Entered June 5, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-005312

BEFORE: PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

OPINION BY KUNSELMAN, J.: **FILED: MAY 23, 2023**

I. Introduction

Premier Comp Solutions, LLC; Laundry Owners' Mutual Liability Insurance Association; Lackawanna Casualty Company; and Brick Street Mutual Insurance Company (hereafter "Insurers") appeal from the order

overruling their preliminary objections to Elite Care, Rx, LLC's complaint.[1]  The trial court rejected Insures' challenge to its subject-matter jurisdiction.  We affirm.

## II.  Factual & Procedural Background

When reviewing an order overruling preliminary objections challenging subject-matter jurisdiction, our "standard of review is *de novo*, and the scope of review is plenary." ***Mazur v. Trinity Area Sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008).  We reverse "only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief."  ***Id.***  Also, this Court "must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts."  ***Id.***  Therefore, we turn to Elite Care's complaint to glean the relevant facts of this case.

According to Elite Care, Insurers offer workers' compensation insurance to employers to cover the costs of treatment and medication under the Workers' Compensation Act for employees who suffer work-related injuries.  Complaint at ¶8.  The employees may choose to fill their prescriptions to treat these injuries through Patient Direct Rx, a home-delivery pharmacy.  ***Id.*** at ¶12.   After Patient Direct Rx fills the prescriptions, certain licensed health care providers ("Providers") purchase the claims arising from these

---

[1] Since the filing of this appeal, Laundry Owners' Mutual Liability Insurance Association settled with Elite Care and discontinued its appeal in this matter.

prescriptions (*i.e.*, the right to bill and collect from the insurance carrier) from Patient Rx for fair-market value. *Id.* at ¶14. The Providers are then legally entitled to collect payment for the prescriptions from the insurance carrier and bear the risk of collection. Elite Care (a separate entity) serves as billing agent for the Providers and ensures their accounts receivable are properly paid. *Id.* at ¶16.

Elite Care avers that it has implemented this practice of collecting on behalf of healthcare providers throughout the country, without issue or objection by other insurers. *Id.* at ¶18. Even within Pennsylvania, all insurance companies (other than Insurers) reimburse Elite Care the price of employees' prescriptions without objection. *Id.* at ¶19. As such, Elite Care claims that Insurers are intentionally and wrongfully refusing to pay for prescriptions that the covered employees have received and for which payment is due. *Id.* at ¶21. Elite Care contends that, when this lawsuit began, Insurers owed $548,035.28 in prescription fees for 110 different employees and that figure continues to accrue as more bills are being improperly denied. *Id.* at ¶ 38.

After negotiations stalled, Insurers indicated that Elite Care's "exclusive remedy" was through an Application for Fee Review in the Pennsylvania Bureau of Workers' Compensation ("Bureau"). *Id.* at ¶ 29. Hence, Elite Care filed an Application for Fee Review before the Bureau's Medical Fee Review

Section.[2] When the Medical Fee Review Section began ruling in favor of Elite Care, Insurers appealed those rulings "to a [Fee Review] Hearing Officer[3] and argued that the Fee Review [Section] lacked jurisdiction over this issue of whether Elite Care was an agent of these providers." *Id.* at ¶ 32. The Hearing Officer issued opinions and orders holding that the Fee Review Section lacked subject-matter jurisdiction and advised "that Elite Care may wish to pursue other remedies, which may be available outside of the fee-review process." *Id.* at ¶ 33.

---

[2] The Medical Fee Review Section is an administrative body that may decide only the "amount and timeliness of the payment made by an insurer." 34 Pa. Code. § 127.251. It has no authority to make legal conclusions. *See Crozer Chester Medical Center v. Bureau of Workers' Compensation, Health Care Services Review Division*, 22 A.3d 189, 196-97 (Pa. 2011).

[3] The Fee Review Hearing Office conducts evidentiary hearings on the validity of a fee-review determination. The hearing includes an examination of "all relevant evidence" and the testimony is "recorded and a full record kept of the proceeding." 34 Pa. Code § 127.259(b), (d). The Hearing Office issues a "fee review adjudication" that "will include all relevant findings and conclusions and state the rationale." 34 Pa. Code § 127.260(a). These procedures ensure that the Bureau's adjudication comports with the requirements of Administrative Agency Law, 2 Pa. C.S.A. § 504, for a valid adjudication.

By contrast, the Medical Fee Review Section performs an administrative function. Its review is limited to the timeliness of an employer's payment and the correct amount owed to the provider. 34 Pa. Code § 127.252. Thus, according to the Commonwealth Court, it would violate due process if the Medical Fee Review Section were to make such a determination. *See Amour Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Office*, 206 A.3d 660, 670 (Pa. Cmwlth. 2019) (*en banc*). As such, either a Hearing Officer or a Workers' Compensation Judge must make legal determinations on behalf of the Bureau, rather than the Fee Review Section.

Based on the administrative adjudication that the Medical Fee Review Section lacked subject-matter jurisdiction, Elite Care filed the instant civil action. Elite Care's complaint included counts of declaratory judgment, fraud, civil conspiracy, and unjust enrichment.

In response, Insurers filed various preliminary objections, one of which alleged the trial court lacked subject-matter jurisdiction over the legal issues raised in the complaint.[4] Following oral argument, the trial court overruled Insurers' preliminary objections. Regarding subject-matter jurisdiction, the court determined this case was not a workers' compensation matter, but rather a claim for damages based on allegations of conspiracy and fraud. The trial court refused to certify its order for an immediate appeal, and Insurers filed a timely Petition for Permission to Appeal.[5]

On October 30, 2020, this Court granted review of the following issue:

> Because the issues raised by the complaint . . . have, as their ultimate basis, injuries compensable under the act, must they be decided by a workers' compensation judge or a fee-review Hearing Officer and not by the court of common pleas?

---

[4] UPMC Benefit Management Services Inc. filed preliminary objections but did not object to the trial court's subject-matter jurisdiction. That company did not participate in this appeal.

[5] *See* Pennsylvania Rule of Appellate Procedure 1311(a)(1).

Insurers' Brief at 7 (capitalization removed). A three-judge panel of this Court unanimously affirmed the trial court's decision. Upon petition of the Insurers, we granted *en banc* review.

## III. Analysis

Insurers attack the trial court's subject-matter jurisdiction based upon the Workers' Compensation Act ("WCA").[6] They contend that the Bureau has exclusive jurisdiction over this matter, because the prescriptions at issue treat work-related injuries. Insurers argue that all counts of the complaint fall under the Bureau's jurisdiction. **See** Insurers' Brief at 24-25. We disagree.

Subject-matter jurisdiction is "the power of the court to hear the cases of the class to which the case before the court belongs, that is, to enter into inquiry, whether or not the court may ultimately grant the relief requested." **Harley v. HealthSpark Found.**, 265 A.3d 674, 687 (Pa. Super. 2021), *reargument denied* (Dec. 1, 2021), *appeal denied*, 277 A.3d 1105 (Pa. 2022). "Except where exclusive original jurisdiction of an action or proceeding is by statute . . . vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas." 42 Pa.C.S.A. § 931(a).

---

[6] **See** 77 P.S. §§ 1-2708.

In its complaint, Elite Care raised counts of declaratory judgment, fraud, civil conspiracy, and unjust enrichment. Thus, we must determine whether these matters are actions over which courts of common pleas have subject-matter jurisdiction or whether they lie exclusively within the jurisdiction of the Bureau.

The General Assembly established the Bureau in 1915 by passing the first iteration of the Workers' Compensation Act.[7] Elite Care's three common-law causes of action clearly predate the Bureau's establishment and have been under the subject-matter jurisdiction of the courts of common pleas since time immemorial. Moreover, we find nothing in the current Workers' Compensation Act granting the Bureau jurisdiction over those specific common-law torts or contract matters. The legislative purpose of the WCA was to divest trial courts of jurisdiction over work-related-negligence cases between employers and employees. In place of trial-court jurisdiction, the statute grants the Bureau administrative and appellate authority over the compensation of employees who are injured at work, without regard to fault.

In its administrative scheme, the WCA provides a remedy for employees with unpaid claims to seek recourse before a Worker's Compensation Judge. A claimant can file a petition to establish an insurer's liability to a billing agent,

---

[7] **See** Pennsylvania Department of Labor & Industry, *Pennsylvania Workers' Compensation Act*, available at https://www.dli.pa.gov/Individuals/Workers-Compensation/publications/Pages/WC%20Act/WC-Act-Landing-Page.aspx (last visited 11/30/22).

such as a review petition or a penalty petition. *See Amour Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Office*, 206 A.3d 660, 666 (Pa. Cmwlth. 2019) (*en banc*). Indeed, the court in *Amour Pharmacy* stated, "claimants have an incentive to file a petition on behalf of a provider, because when an insurer violates the WCA by failing to make proper payment to a medical provider, the penalty is payable to the claimant." *Id.* (citing *Selective Insurance Co. of Am. v. Bureau of Workers' Comp. Fee Rev. Hearing Office*, 86 A.3d 300 (Pa. Cmwlth. 2014)). However, regarding putative providers and billing agents (like Elite Care), the *Amour Pharmacy* Court found an "absence of a direct statutory remedy" for such entities. *Id.*

In *Armour Pharmacy*, an employer challenged the authority of the Fee Review Section to award reimbursement to the pharmacy on the grounds that it was not a "provider" under the WCA. The employer further challenged the jurisdiction of the Hearing Officer to determine whether the pharmacy was a provider. Based on *Selective Insurance*, *supra*, the Hearing Office ruled that it lacked jurisdiction over the legal issue of whether the pharmacy was a provider and dismissed the pharmacy's fee-review petitions. The pharmacy petitioned for review of that determination before the Commonwealth Court and argued that its due process rights would be denied if the Bureau did not adjudicate its status as provider under the WCA. The pharmacy asserted that the language of the WCA did not give putative providers a procedure to adjudicate their rights. The *Armour Pharmacy* Court agreed.

- 8 -

The court also acknowledged that it could not expand the scope of a fee review to create a remedy for those entities, because enlarging the scope of the WCA is a matter "for the legislature assuming there is a need for a provider to have another remedy." *Id.* Critically, the court also observed that, if a party believes "the other is effecting a fraud, it can pursue that claim in a legal action, such as a declaratory-judgment action." *Id.* at 667.

Despite those acknowledgements, the *Armour Pharmacy* Court held that before a claim can go to fee review, a hearing officer must determine the legal issue of who is a "provider" under the WCA. "Whether an entity is a 'provider' has been considered a question of employer liability and, thus beyond the scope of a fee-review proceeding." *Id.* at 666. The court stated that, when an "employer challenges a fee determination of the Medical Fee Review Section for the stated reason that the medical service was not rendered by a 'provider' within the meaning of the WCA, that threshold question must be decided by the Hearing Office." *Id.* Significantly, the issue could not be decided by the Medical Fee Review Section.

Thus, although the WCA creates no administrative proceeding for a putative provider to seek redress within the Bureau, the Commonwealth Court manufactured one. That court remanded the matter to the Hearing Office for a determination of whether the billing agent was a provider within the meaning of the WCA. In doing so, the *Armour Pharmacy* Court created jurisdiction in the Bureau even though the legislature had not.

Respectfully, in our view, the Commonwealth Court lacked the power to graft an extra-statutory scheme onto the WCA for the benefit of the putative provider. The Supreme Court of Pennsylvania has held that, under 1 Pa.C.S.A. § 1923, courts may not add to a statute, because this "expands its application" in a manner that the legislature did not intend. ***Crown Castle NG E. LLC v. Pennsylvania Pub. Util. Comm'n***, 234 A.3d 665, 682 (Pa. 2020). When "the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction." ***Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles***, 40 A.3d 1186, 1194–95 (Pa. 2012).

Attempting to effectuate due process, the ***Armour Pharmacy*** Court legislated from the bench. The court created an administrative proceeding for putative providers by bestowing a jurisdiction upon Bureau Hearing Officers. That proceeding and jurisdiction cannot be found in the language of the WCA. Therefore, we decline to follow ***Armour Pharmacy***, in so far as it stands for the proposition that Elite Care may or should have sought redress within the Bureau.

Simply stated, the Worker's Compensation Act does not provide for an administrative proceeding by or against putative providers or their billing agents in the Bureau. Such entities have no standing there, because the WCA does not confer it upon them. That statute has not divested the original

jurisdiction of the courts of common pleas over matters such as the instant lawsuit.

In this case, Elite Care has asserted four causes of action. We begin with its statutory cause of action for declaratory judgment. In the Declaratory Judgment Act, the General Assembly dictates that "***Courts of record***, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S.A. § 7532 (emphasis added). This statute makes no mention of the Bureau. By the plain language of Section 7532, the legislature clearly vested jurisdiction over declaratory-judgment actions in the courts of records, *i.e.*, the courts of the common pleas and the Commonwealth Court (when sitting in its original jurisdiction).

The Declaratory Judgment Act further identifies who may file an action for relief:

> Any person interested under . . . contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S.A. § 7533.

Here, Elite Care is an interested party to its contracts with various Providers. Its rights and legal relations are affected by Insurers' actions in denying those Providers payment for the prescriptions at issue. Elite Care

seeks a determination of its rights to be paid on behalf of Providers, under its contracts, as their billing agents. Thus, Elite Care is a person interested in certain contracts with the Providers, and, therefore, it may request declaratory relief under the Declaratory Judgment Act.

And, as noted, the court of common pleas is the court of record for such an action to declare rights, status, and other legal relations whether further relief is or could be claimed. 42 Pa.C.S.A. § 7532.

Additionally, Elite Care has filed claims of fraud, civil conspiracy, and unjust enrichment. Those claims fall within the exclusive, original jurisdiction of the Court of Common Pleas of Allegheny County. Therefore, the trial court correctly ruled that it has subject-matter jurisdiction over the common-law causes of action in this case and the statutory action for declaratory judgment. *See* 42 Pa.C.S.A. § 7532, ***supra***.

The WCA does not divest trial courts of that jurisdiction over causes of actions where, as here, the parties to a lawsuit are an employer's insurers and a provider's billing agent.

Order affirmed. Case remanded for further proceedings.

Jurisdiction relinquished.

Panella, P.J., Dubow, Murray, McCaffery and Sullivan, JJ join this Opinion.

McLaughlin, J., files a Concurring Opinion in which Murray, J. joins.

Nichols, J., concurs in the result.

- 12 -

Olson, J. files a Dissenting Opinion.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023