**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| ELITE CARE, RX, LLC | : | No. 25 WAP 2023 |
| | : | |
| v. | : | Appeal from the Order of the |
| | : | Superior Court entered May 23, |
| PREMIER COMP SOLUTIONS, LLC; | : | 2023 at No. 1144 WDA 2020, |
| LAUNDRY OWNERS' MUTUAL LIABILITY | : | affirming the Order of the Court of |
| INSURANCE ASSOCIATION; UPMC | : | Common Pleas of Allegheny County |
| BENEFIT MANAGEMENT SERVICES, INC. | : | entered June 5, 2020 at No. GD-19- |
| D/B/A UPMC WORK PARTNERS; | : | 005312 and remanding. |
| LACKAWANNA CASUALTY COMPANY; | : | |
| AND BRICK STREET MUTUAL | : | ARGUED:  April 9, 2024 |
| INSURANCE COMPANY | : | |
| | : | |
| APPEAL OF: PREMIER COMP | : | |
| SOLUTIONS, LLC AND BRICK STREET | : | |
| MUTUAL INSURANCE COMPANY | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE WECHT**                                                  **DECIDED: JULY 17, 2024**

The Superior Court below affirmed a decision allowing a lawsuit for fraud, civil conspiracy, and unjust enrichment to proceed against workers' compensation insurance carriers that allegedly failed to reimburse providers for medications dispensed to injured workers.  As I detail below, that holding plainly conflicts with the Workers' Compensation Act's exclusive remedy provision and was based upon a misunderstanding of the Act's fee review provision.  The Superior Court's decision should be reversed.

**I. Statutory Background**

Under the Workers' Compensation Act, employers and their insurers are liable for a claimant's reasonable medical expenses, which includes medication and medical supplies.[1] Generally speaking, disputes about medical expenses can be litigated three different ways within the workers' compensation system: utilization review, penalty petitions, and fee review.

Utilization review can be used by employers to challenge the reasonableness or necessity of a billed service, or by providers to secure pre-approval from the insurer for a medical service.[2] When a request for utilization review is made, an impartial "provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review" will consider the reasonableness and necessity of the treatment and render a decision.[3] A party who disagrees with the outcome of the utilization review can appeal the determination to a Workers' Compensation Judge, and then eventually to the Commonwealth Court as well.[4]

Penalty petitions arise in a different context. A claimant who believes that their employer has failed to satisfy its statutory obligation to pay necessary medical expenses can file a penalty petition, which will then be decided by a WCJ. Unlike utilization review, which medical providers can initiate themselves, it is only *the claimant* that can file a penalty petition. This avenue therefore may be of limited utility to medical providers

---

[1]    77 P.S. § 531(1)(i) ("The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed.").

[2]    77 P.S. § 531(6).

[3]    *Id.* § 531(6)(i).

[4]    *Id.* § 531(6)(iv).

whenever the claimant is unmotivated to file a penalty petition against their employer for one reason or another.[5]

Fee review is the third avenue for billing challenges. Under a provision of the Act passed in 1993, providers can challenge the "amount or timeliness" of the insurer's payment by filing a fee review application. Fee review applications are first decided administratively by the Bureau of Workers' Compensation, but either party can take a *de novo* appeal to a special fee review hearing officer.[6] The hearing officer's ruling can then be appealed to the Commonwealth Court. This process is governed by Subsection 306(f.1)(5) of the Act, which states that

> [a] provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.[7]

---

[5]     One could imagine reasons why a claimant who is receiving wage-loss benefits under the Act might be reluctant to initiate adversarial proceedings against their employer primarily for the benefit of a medical provider. For example, a claimant in an uncontested case who is in the process of negotiating a settlement with their employer might opt to forego seeking penalties. A claimant who expects to return to work with their employer post-recovery may be similarly apprehensive about filing a penalty petition. That said, the Act incentivizes claimants to file penalty petitions by imposing monetary penalties on employers who fail to make required payments—with such penalties being payable to *the claimant*. 77 P.S. § 991(d)(i) (stating that employers may be penalized up to ten percent of the amount awarded (or up to fifty percent if the delay was "unreasonable or excessive") and that any penalties are "payable to the same persons to whom the compensation is payable").

[6]     It is my understanding that these fee review hearing officers are sometimes (though not always) WCJs wearing different hats. *See Prescription Partners, LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, No. 2107 C.D. 2014, 2015 WL 6473394, at *1 (Pa. Commw. July 17, 2015) (Cohn Jubelirer, J., concurring) (noting that "the Hearing Officer in the instant matter was a Workers' Compensation Judge" acting in a different capacity).

[7]     77 P.S. § 531(5).

The Act elsewhere defines a "provider" as a "healthcare provider," which in turn is defined to mean:

> any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.[8]

This Court has emphasized that fee review is designed to be a simple process with "a very narrow scope."[9] That scope is limited to determining the "relatively simple matters" of "'the amount or timeliness' of an insurer's payment for a particular treatment."[10] This means that "an employer's liability for a claimant's work injury must be established *before* the fee review provisions can come into play."[11]

## II. Case Law Interpreting Subsection 306(f.1)(5)

As I detail below, a trio of Commonwealth Court decisions in the mid-2010s injected unnecessary confusion into the fee review system. That confusion ultimately dissipated in 2019, when the Commonwealth Court, sitting *en banc*, overruled those three earlier decisions. While this should have resolved the matter, the Superior Court below opted to embrace the Commonwealth Court's since-discarded line of precedent, ignoring the difficult lessons learned by the Commonwealth Court in the previous decade.

The first of these three erroneous decisions concerned whether a provider billing a workers' compensation insurer was the same entity that rendered the care to the

---

[8]     77 P.S. § 29.

[9]     *Crozer Chester Med. Ctr. v. Dept. of Lab. & Indus.*, 22 A.3d 189, 196 (Pa. 2011).

[10]     *Id.* at 197.

[11]     *Armour Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 206 A.3d 660, 666 (Pa. Commw. 2019) (emphasis added).

claimant in the first place. The first-level fee reviewer initially ordered the insurer to pay the provider's bills, but the fee review hearing officer ruled on appeal that the Bureau lacked jurisdiction over the dispute because it did not concern the "amount or timeliness" of payment, but instead concerned whether the provider (an entity called the Physical Therapy Institute) was a provider under the Act. On further appeal, the Commonwealth Court agreed with the hearing officer, holding that fee review is not the proper forum to resolve an entity's provider status.[12]

The Commonwealth Court reaffirmed this holding the following year in a case involving the same parties. In *Physical Therapy Institute, Inc. v. Bureau of Workers' Compensation Fee Review Hearing Office*, 108 A.3d 957 (Pa. Commw. 2015), the Institute explicitly asked the court to overturn its 2014 holding. The Institute emphasized that, if the court's ruling stands, all an insurer participating in fee review would have to do is assert—whether true or not—that the person or entity submitting the bill is not a provider under the act. Under the Commonwealth Court's interpretation, that mere allegation would render the Bureau and the fee review hearing officer jurisdictionless to consider the dispute. And because un/underpaid providers lack standing to file penalty petitions directly with the WCJ, the provider's only recourse would be to encourage the claimant to seek penalties against their employer.

Declining to overturn the 2014 decision, the court reiterated that whether an entity is a provider under the Act is "a question of liability, which is beyond the scope of a fee review and must be decided by a Workers' Compensation Judge."[13] As for the argument

---

[12] *Selective Ins. Co. of Am. v. Bureau of Workers' Compensation Fee Review Hearing Off.*, 86 A.3d 300 (Pa. Commw. 2014) (overruled by *Armour Pharmacy*, 206 A.3d at 660).

[13] *Physical Therapy Inst., Inc. v. Bureau of Workers' Compensation Fee Review Hearing Off.*, 108 A.3d 957, 959 (Pa. Commw. 2015).

that the court's interpretation would allow insurers to undermine the entire fee review process just by challenging a biller's provider status, the court stated that providers still have "recourse" inasmuch as claimants always can "file a [penalty] petition to establish [an] insurer's liability."[14]

The third case in this line of precedent, also from 2015, involved a physician who was dispensing pain medications from his own office.[15] When doing this, the physician would "repackage" the medications and assign them new National Drug Codes that significantly increased the insurer's reimbursement cost. The physician never billed the workers' compensation insurer directly for the medications; instead, he assigned the claims to an entity called Prescription Partners, which then billed the insurer. When the insurer refused to pay the full cost of the repackaged drugs, Prescription Partners initiated fee review proceedings. The first-level administrative analyst concluded that Prescription Partners was not a provider under the Act and therefore lacked standing to initiate fee review. Prescription Partners then unsuccessfully appealed that determination to a Hearing Officer.

On further appeal, the Commonwealth Court cited the two cases discussed above and reiterated that the Bureau and its fee review hearing officers lack "jurisdiction to determine whether an entity is a 'provider' of medical services, or simply a billing agency."[16] The court stated that provider status "is a question of liability, which is beyond the scope of a fee review and must be decided by a Workers' Compensation Judge."[17] In a concurrence, Judge Cohn Jubelirer conceded that the majority "is not incorrect based

---

[14] *Id.* at 960.

[15] *Prescription Partners, LLC*, 2015 WL 6473394, at *1.

[16] *Id.* at 3 (quoting *Physical Therapy Inst.*, 108 A.3d at 959).

[17] *Id.*

on existing precedent," but she nevertheless suggested that "reconsideration of those cases appears appropriate."[18]

The Commonwealth Court's holding in the above cases that the Bureau and its fee review hearing officers lack jurisdiction to consider the threshold issue of whether an entity is a provider unquestionably conflicts with the legislature's intent when it created the fee review process. As Workers' Compensation Judge and treatise author David B. Torrey has explained:

> Under [1993 amendments to the Act], jurisdiction over disputes regarding amount and timeliness of payment by carriers to providers was taken away from WCJs. In substitution, administrative review was introduced, with any appeal *de novo* to a special hearing officer. The injured worker was not to be involved. The idea was to expedite disputes that occur in the program when the injured worker is not involved, but where, instead, the dispute is only a technical one regarding the correct amount to be reimbursed. And, of course, the Act mandates that all providers who treat workers' compensation claimants are bound by the provisions of the Act; the law prohibits providers from direct-billing and balance-billing injured workers; and, generally, providers have no standing to file petitions directly with a WCJ to get their bills paid.
>
> A controversy was injected into this system in the wake of three decisions (one in 2014 and two in 2015), from the Commonwealth Court restricting the Fee Review Hearing Officer to deciding only issues of the amount and timeliness of bills. Via these rulings, the Hearing Officer was *prohibited* from determining the basic issue of *standing*. In turn, this left two entities—one a billing agent, and the other a claim assignee—without recourse in the fee review system to complain of unsatisfactory payment, until a WCJ resolved any challenge to the entity's identity as a "provider."
>
> An irony was thus created under the Pennsylvania practice: the 1993 reform *forces* physicians and other providers to work *within* the system (no direct billing of the injured worker, for example, is permitted), but then left at least some of them without an effective, cost-efficient remedy to secure payment. In a further irony, the solution was for the provider to encourage the injured worker, who was intended to be *left out* of the controversy, to file a petition with a WCJ in the *conventional* track of litigation.

---

[18]    *Id.* at *5 (Cohn Jubelirer, J., concurring).

Critics of the regime created by these cases complained that provider "payment can be stymied by carrier/employer pretextually denying causation and the fact that the party seeking relief is in fact a 'provider.'" R. Burke McLemore, a leading critic of this school, admonished, "By the simple expedient of denying either causation or status as a provider, a carrier/employer can completely thwart reimbursement to a provider of legitimate bills—and then go ahead and settle the case with (or without) any admission of liability and leaving the provider hanging and without any effective remedy."[19]

Fortunately, the Commonwealth Court overruled this line of precedent in 2019. In A*rmour Pharmacy v. Bureau of Workers' Comp. Fee Review Hearing Office*, 206 A.3d 660 (Pa. Commw. 2019), the Commonwealth Court held that "where the employer challenges a fee determination of the Medical Fee Review Section for the stated reason that the medical service was not rendered by a 'provider' within the meaning of the Act, that threshold question must be decided by the Hearing Office."[20] The court nevertheless cautioned that its holding does not "expand the scope of the fee review proceeding beyond timeliness and amount owed to a provider that has treated a claimant for his work injury."[21] The decision in *Armour Pharmacy* was never appealed to this Court.

### III. The Decision Below

This appeal concerns prescriptions that injured employees had filled by a home-delivery pharmacy called Patient Direct RX. Behind the scenes, Patient Direct does not operate as a typical pharmacy would. When Patient Direct fills an injured workers' prescription, it does not simply bill the workers' compensation insurance carrier for the

---

[19]     DAVID B. TORREY & ANDREW E. GREENBERG, WORKERS' COMPENSATION: LAW AND PRACTICE § 9:157 (West 2022) (emphasis in original; footnotes omitted).

[20]     *Armour Pharmacy*, 206 A.3d at 670.

[21]     *Id.* ("This holding does not allow the Hearing Office to determine the reasonableness of the medical care or service; the claimant's injury as work-related; or the employer's liability for a work injury.").

medication; instead, it sells to the treating physician who wrote the prescription in the first place the *right* to bill the workers' compensation insurer.

Appellee Elite Care, RX, LLC is a billing agent for some of the medical providers who purchased claims from Patient Direct RX. When Elite Care tried to collect payment on behalf of its providers, the appellant Insurers took the position that Elite Care is not a provider under the Act and refused payment. In total, Insurers denied payment for 110 different injured employees' medications, resulting in $548,035.28 in unpaid prescriptions. When Elite Care's invoices went unpaid, it initiated many separate fee-review proceedings with the Bureau. The Bureau ruled in favor of Elite Care in some of the cases, and the Insurers appealed some of those decisions to fee review hearing officers, arguing that the Bureau lacked jurisdiction to determine Elite Care's status as a provider. The hearing officers agreed with Insurers that the Bureau lacked jurisdiction over Elite Care's fee review applications.

Elite Care did not appeal those adverse decisions to the Commonwealth Court. Instead, Elite Care filed a civil lawsuit against Insurers alleging fraud, civil conspiracy, and unjust enrichment. Elite Care also sought a declaratory judgment that it is a provider under the Act. Insurers filed preliminary objections asserting the trial court lacked subject-matter jurisdiction over the dispute because Elite Care's exclusive remedy lies in the workers' compensation system. The trial court overruled Insurers' preliminary objections, reasoning that the case is not a workers' compensation case but rather a claim for damages arising from Insurers' alleged fraud and conspiracy.[22] A three-judge panel of

---

[22] Trial Court Opinion, 12/28/2020, at 2 ("This case is not a workers' compensation matter. It is a declaratory judgment and damages case alleging that insurers and their administrator engaged in fraud and civil conspiracy by refusing to pay Elite [Care] money it is owed for medicine supplied to certain insured persons. Such a case is within the jurisdiction of this court.").

the Superior Court unanimously affirmed the trial court and Insurers then successfully petitioned for *en banc* review.[23]

The *en banc* court affirmed the trial court, offering essentially three rationales for its decision[24]  First, the court noted that "Elite Care's three common-law causes of action clearly predate the [Workers' Compensation Act] and have been under the subject-matter jurisdiction of the courts of common pleas since time immemorial."[25]  Second, the court emphasized that there is "nothing in the current Workers' Compensation Act granting the Bureau jurisdiction over" the kinds of tort claims that Elite Care alleged in its complaint.[26]  Lastly, the panel declined to follow *Armour Pharmacy*, accusing Commonwealth Court in that case of "manufacturing" an "administrative proceeding for a putative provider to seek redress within the Bureau."[27]  Criticizing the *Armour Pharmacy* Court for what it called "legislating from the bench," the majority opined that the Commonwealth Court created:

> an administrative proceeding for putative providers by bestowing a [*sic*] jurisdiction upon Bureau Hearing Officers.  That proceeding and jurisdiction cannot be found in the language of the [Workers' Compensation Act].  Therefore, we decline to follow *Armour Pharmacy*, in so far as it stands for the proposition that Elite Care may or should have sought redress within the Bureau.
>
> Simply stated, the Worker's Compensation Act does not provide for an administrative proceeding by or against putative providers or their billing agents in the Bureau.  Such entities have no standing there, because the [Act] does not confer it upon them.  That statute has not divested the original

---

[23]    *See Elite Care, Rx, LLC v. Premier Comp Solutions, LLC*, 2022 WL 420030 (Pa. Super. 2022).

[24]    *Elite Care, Rx, LLC v. Premier Comp Solutions, LLC*, 296 A.3d 29 (Pa. Super. 2023).

[25]    *Id.* at 33.

[26]    *Id.*

[27]    *Id.*

jurisdiction of the courts of common pleas over matters such as the instant lawsuit.[28]

## IV. Discussion

The decision below plainly conflicts with the Workers' Compensation Act's exclusive remedy provision, which this Court has held "extends to [the] workers' compensation insurance carrier, protecting the insurer to the full extent of the employer's protection."[29] Because the employer/insurer's obligation to pay the claimant's medical expenses arises from the Workers' Compensation Act in the first place, the workers' compensation system is the exclusive forum for resolving both payment disputes and alleged mismanagement of workers' compensation claims.[30]

The Superior Court's rationale for departing from this well-established rule is unpersuasive. The panel first reasoned that "Elite Care's three common-law causes of action" are cognizable in the trial court because the tort claims in question "predate" the 1915 Workers' Compensation Act "and have been under the subject-matter jurisdiction of the courts of common pleas since time immemorial."[31] Even Elite Care does not embrace this legal theory. There is no support whatsoever for the idea that whether a tort claim is barred by the exclusive remedy provision turns on whether the tort in question predates the 1915 Workers' Compensation Act. To the extent that the court believed that the

---

[28]     *Id.* at 34.

[29]     *Kuney v. PMA Ins. Co.*, 578 A.2d 1285, 1286 (Pa. 1990) ("An employer's liability for work-related injuries is governed solely by the [Workers'] Compensation Act, and the same is true of a compensation insurance carrier."); *see* 77 P.S. § 481(a) ("The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any [compensable] injury or death[.]" (footnote omitted)).

[30]     *Kuney*, 578 A.2d at 1286.

[31]     *Elite Care, Rx*, 296 A.3d at 33.

General Assembly only intended to bar civil suits for torts created *after* the enactment of the Workers' Compensation Act, the panel was simply mistaken.

The court further underscored that "nothing in the current Workers' Compensation Act grant[s] the Bureau jurisdiction over" the specific common-law torts alleged in Elite Care's complaint.[32] But that proves nothing. The reason why the Act does not give the Bureau jurisdiction over claims of fraud and unjust enrichment against employers/insurers in connection with their handling of workers' compensation claims is simple: employers and insurers have been given *immunity* from such claims in exchange for accepting the remedies and obligations established in the Act.[33] The absence of a statutory provision giving the workers' compensation authorities jurisdiction over a specific set of claims does not mean that the General Assembly intended for those claims to proceed in the trial court. Indeed, there is nothing in the Act granting the workers' compensation authorities jurisdiction over claims of negligence against employers. But that is not evidence that the legislature intended for *trial courts* to hear negligence suits against employers; it is the result of employers being immune from employee negligence suits.

That leaves only the Superior Court's theory that the exclusive remedy provision does not bar Elite Care's civil suit because the Workers' Compensation Act only allows providers (not *putative* providers) to seek administrative fee review. Of course, the Commonwealth Court in *Armour Pharmacy* held that the Bureau does have jurisdiction to decide provider status. And I have little doubt that *Armour Pharmacy*—at least broadly speaking—was correctly decided. The Act's fee-review provision merely states that "a provider . . . who disputes the amount or timeliness of the payment from the employer or

---

[32]    *Id.*

[33]    *Kuney*, 578 A.2d at 1286.

insurer shall file an application for fee review with the department."[34]  While the statute plainly limits participation in the fee review process to providers, it does not explicitly preclude the Bureau from deciding the threshold issue of an applicant's provider status. The restriction is a judicial invention.  Furthermore, to the extent that the statute is ambiguous regarding the Bureau's authority to decide whether a putative provider is in fact a provider, the Superior Court's chosen interpretation undoubtedly conflicts with the legislature's intent, which was to create an expedited fee-review process within the workers' compensation system that does not require the involvement of claimants.[35]

To my mind, the only objectionable aspect of the *Armour Pharmacy* decision is that it allows only *fee review hearing officers* to resolve challenges to a billing entity's provider status, meaning that first-level administrative reviewers cannot consider the issue in the first instance.[36]  I concede that this piece of the Commonwealth Court's decision is not grounded in any statutory text and appears to be driven primarily by the concern that those conducting the initial administrative review often lack legal training.[37]

---

[34]     77 P.S. § 531(5).

[35]     *See* DAVID B. TORREY & ANDREW E. GREENBERG, WORKERS' COMPENSATION: LAW AND PRACTICE § 9:157 (West 2022) (highlighting the irony that the Commonwealth Court's pre-*Armour Pharmacy* decisions left some putative providers "without an effective, cost-efficient remedy to secure payment" while insisting that "the solution was for the provider to encourage the injured worker, who was intended to be left out of the controversy, to file a petition with a WCJ in the conventional track of litigation" (emphasis omitted)).

[36]     *See Armour Pharmacy*, 206 A.3d at 670 ("We hold that where the employer challenges a fee determination of the Medical Fee Review Section for the stated reason that the medical service was not rendered by a 'provider' within the meaning of the Act, that threshold question must be decided by the Hearing Office.  Jurisdiction, a quasi-judicial matter, is not to be decided by the Medical Fee Review Section, whose responsibility is solely administrative.").

[37]     *See generally Crozer Chester Med. Ctr.,* 22 A.3d at 196 (explaining that the fee review process "is administered by nurses" whose "skills are markedly distinct from" those of workers' compensation judges).

It is this part of *Armour Pharmacy* that I believe prompted the court below to accuse the Commonwealth Court of "legislat[ing] from the bench."[38] Regardless, this Court need not adopt *Armour Pharmacy*'s reasoning in toto to conclude that the Superior Court erred below. It is enough to say that *Armour Pharmacy* was correct in abandoning the notion that provider status "is a question of liability, which is beyond the scope of a fee review and must be decided by a Workers' Compensation Judge."[39] Whether challenges to an entity's provider status should be resolved in the first or the second level of the fee review process is irrelevant. It is enough for our purposes today to say that nothing in the Act prevents the issue of a putative provider's standing from being resolved in fee review. The Superior Court therefore erred in holding that the Act "does not provide for an administrative proceeding by or against putative providers or their billing agents in the Bureau."[40]

In sum, the decision below misinterpreted Subsection 306(f.1)(5) and created a state of affairs that plainly conflicts with the Act's exclusive remedy provision. Elite Care's sole remedy lies in the administrative realm. The lower courts therefore erred in allowing Elite Care's civil suit to proceed.

I would reverse the Superior Court's decision.

Justice Brobson joins this opinion in support of reversal.

---

[38] *See Elite Care, Rx, LLC*, 296 A.3d at 34 (accusing the *Armour Pharmacy* Court of creating "an administrative proceeding for putative providers" that "cannot be found in the language of the [Act]").

[39] *Prescription Partners*, LLC, 2015 WL 6473394, at *3.

[40] *Elite Care, Rx, LLC*, 296 A.3d at 34 (stating that the Act "does not provide for an administrative proceeding by or against putative providers or their billing agents in the Bureau," meaning that the statute "has not divested the original jurisdiction of the courts of common pleas" over actions brought by putative providers).